# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

ALAN CROUCH, and

NORA CROUCH,

       Plaintiffs,

v.                                              ACTION NO. 2:11cv433

BANK OF AMERICA, N.A., and

RECONSTRUST COMPANY, N.A.
AND ALG TRUSTEE, L.L.C.,
AS SUBSTITUTE TRUSTEE,

       Defendants.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by orders of reference dated October 5, 2011 and November 8, 2011.

This case was referred for a report and recommendation on Defendants' Motion to Dismiss (ECF No. 5) and Plaintiffs' Motion to Remand (ECF No. 7). For the reasons stated herein, the Court recommends that Defendants' Motion to Dismiss be GRANTED and Plaintiffs' Motion to Remand be DENIED.

## I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

On September 15, 2006, Plaintiffs took out a first lien mortgage in the original amount of $305,600.00 in connection with the purchase of property on Forest View Drive, Virginia Beach, VA 23455 ("the Property"). Compl. ¶ 1, ECF No. 1-1. BAC Home Loan Servicing, LP, FKA Countrywide Home Loans Servicing, LP, a Bank of America company ("BOA") serviced the loan. Compl. ¶ 2. In February 2010, Plaintiffs contacted BOA to discuss a loan modification. Compl. ¶ 5. According to the Complaint, Defendant BOA made an irrevocable offer to modify Plaintiffs' loan if Plaintiffs met the condition precedent of financial eligibility for the Home Affordable Modification Program ("HAMP").[1] Compl. ¶¶ 28-29. The Complaint claims Plaintiffs gave up other foreclosure avoidance options, as consideration for this contract with BOA. Compl. ¶ 30-32. Consequently, Plaintiffs allege, "Defendant BOA and Plaintiffs mutually and voluntarily contracted to engage in foreclosure avoidance measures related to Plaintiffs' existing first mortgage." Compl. ¶ 6. Plaintiffs further claim, "as part of the contract, Parties mutually contracted that Defendant BOA would forbear foreclosure on Plaintiffs' home while the agreed upon services were being performed." Compl. ¶ 33. The Complaint asserts Defendant Reconstruct Company, N.A. and ALJ Trustee, L.L.C. ("the Substitute Trustee"), as an agent of BOA, was bound by the contractual terms concerning foreclosure. Compl. ¶ 46.

---

[1] "The Department of Treasury established the Home Affordable Modification Program ("HAMP") pursuant to Sections 101 and 109 of the Emergency Economic Stabilization Act of 2008. Section 109 of the Act was later amended by Section 7002 of the American Recovery and Reinvestment Act of 2009. . . . The program assists borrowers who are delinquent on the mortgages for their primary residence or facing imminent risk of default. . . . Under the program, mortgage loan servicers enter into an agreement with the Federal National Mortgage Association ("Fannie Mae") whereby the servicers agree to perform loan modification and foreclosure prevention services in exchange for incentives provided by the Department of Treasury. Borrowers in risk of defaulting on their mortgages can then apply to the program and the mortgage servicer provides the modification or prevention services to the borrower. As a condition of participating in the program, servicers must comply with guidelines and procedures issues by the Department of Treasury. <u>Escobedo v. Countrywide Home Loans, Inc.</u>, No. 09-cv-1557, 2009 U.S. Dist. Lexis 117017, at *1 (S.D. Cal. Dec. 15, 2009)." <u>Winn v. Chase Mortgage Servs.</u>, No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041, at *5-7 (E.D. Va. Oct. 29, 2010); <u>see</u> Commitment to Purchase Financial Instrument and Servicer Participation Agreement, available at https://www.hmpadmin.com/portal/programs/servicer.jsp; <u>see also</u> Home Affordable Modification Program: Overview, https://www.hmpadmin.com/portal/programs/hamp.jsp (last visited Nov. 29, 2011).

On June 22, 2010, Plaintiffs retained the Law Office of Heath J. Thompson, P.C. ("HJT") to represent them in obtaining a loan modification and avoiding foreclosure. Compl. ¶ 7.  From June 22, 2010, through March 19, 2011, HJT engaged in extensive communications and correspondence with BOA regarding the status of the loan modification. Compl. ¶ 8-17.  On March 19, 2011, BOA denied Plaintiffs' HAMP loan modification, citing lack of documentation. Compl. ¶ 18.

Plaintiffs appealed the denial. Compl. ¶ 19.  Nevertheless, on March 29, 2011, Defendants sent Plaintiffs notice that their home would be sold at auction. Compl. ¶ 20. Following further communication between the HJT and BOA, BOA denied Plaintiffs' loan modification on May 19, 2011, on the basis that Plaintiffs' financials did not support affordability. Compl. ¶ 21.  An auction of the Property was scheduled for June 29, 2011. Compl. ¶ 25.

Plaintiffs filed a Bill of Complaint and Petition for Preliminary Injunction on June 24, 2011, in the Circuit Court for the City of Virginia Beach, Virginia, alleging breach of contract, negligent or willful mishandling of Plaintiffs' loan modification application, and tortious interference with a contract. Notice of Removal Ex. A ("Compl."), ECF No. 1-1.  Plaintiffs also requested a preliminary injunction to preserve the status quo until the complaint could be reviewed. Id. at 9.

Defendants removed the action to this court on August 4, 2011. Notice of Removal, ECF No. 1.  On August 11, 2011, Defendants filed a Motion to Dismiss (ECF No. 5) pursuant to Fed. R. Civ. Proc. 12(b)(6).  No opposition has been filed.  Plaintiffs filed a Motion to Remand (ECF No. 7) on September 12, 2011, to which Defendants filed an opposition on September 26, 2011. Accordingly, both motions are ripe for determination.

## II. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(h)(3) provides for the dismissal of an action at any time the Court determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Unless a matter involves an area over which federal courts have exclusive jurisdiction, a federal court has subject matter jurisdiction over a matter only when the matter "arises under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (federal question jurisdiction), or if "the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states," 28 U.S.C. § 1332(a)(1) (diversity jurisdiction).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint; it " 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999) (quoting <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)). In deciding such a motion, a court must first be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The Court must accept as true well-pleaded allegations and construe them in favor of the non-moving party. <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994).

While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." <u>Id.</u> The plausibility standard requires more than a showing of "a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). In other words, "[a] claim has facial plausibility

4

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To obtain a preliminary injunction, a plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Winter v. NRDC, 555 U.S. 7, 20 (2008); Real Truth About Obama, Inc. v. REC, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 130 S. Ct. 2371 (2010).

### III. ANALYSIS

Plaintiffs allege BOA contracted to modify Plaintiffs' loan if Plaintiffs met the HAMP eligibility requirements, mishandled Plaintiffs' loan modification application, and ultimately breached the contract by denying the loan modification.  Plaintiffs seek a preliminary injunction to enjoin Defendants BOA and the Substitute Trustee from instituting foreclosure proceedings on the Property.  Plaintiffs further ask the Court to order BOA to grant Plaintiffs' loan modification, or alternatively, to properly process the loan modification application.  Lastly, Plaintiffs are seeking one million dollars in actual and punitive damages.

The Court must first determine whether it has jurisdiction over this matter.  Defendants have removed this case on the basis of both the court's diversity jurisdiction and its federal question jurisdiction. Notice of Removal.  The Complaint establishes that the amount in controversy is $1,000,000, and that Plaintiffs are residents of Virginia. Compl. ¶ 1, Prayer for Relief.  The Notice of Removal states Defendant BOA is a citizen of North Carolina because its articles of association designate the bank's main office in North Carolina. See 28 U.S.C. § 1348; Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2006) (holding "[a] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of

5

association, is located"); Hill v. Bank of America Corp., No. 1:06cv804GE, 2006 WL 1518874, at *1 (N.D. Ga. May 30, 2006) ("[Bank of America, N.A.] . . . is a national banking association located in the State of North Carolina, as designated in its articles of association."). The Substitute Trustees are citizens of Virginia. Mot. to Remand 3. Consequently, Plaintiffs assert the case should be remanded to state court because it lacks complete diversity. Id. The complete diversity requirement is satisfied "when no party shares common citizenship with any party on the other side." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir.1999). The issue becomes whether the Substitute Trustee is, as Defendants assert (Opp'n to Remand 9), fraudulently joined or a nominal defendant whose citizenship should not factor into the diversity analysis. See Navarro Savings Ass'n v. Lee, 446 U.S. 458, 460-61 (1980) (nominal party); Hartley v. CSX Transp., 187 F.3d 422, 424 (4th Cir.1999) (fraudulently joined party).

To establish the Substitute Trustee was fraudulently joined, Defendants must show either that Plaintiffs cannot establish a cause of action in state court against the Substitute Trustee, or that there has been outright fraud in Plaintiff's pleading of jurisdictional facts. See Payne v. Bank of America, No. 3:09cv80, 2010 U.S. Dist. LEXIS 12076, at *8 (W.D. Va. Feb. 11, 2010) (citing Baltimore Cnty. v. Cigna Healthcare, 238 F. App'x 914, 920 (4th Cir. 2007)). Plaintiffs have not alleged any jurisdictional facts in the Complaint, and the jurisdictional facts gleaned from the record do not appear to be in dispute. Accordingly, the Court will focus on whether Plaintiffs can establish a state law cause of action against the Substitute Trustees. Defendants bear the heavy burden of showing that Plaintiffs cannot establish a claim against the Substitute Trustee "even after resolving all issues of law and fact in [Plaintiffs'] favor." See Wygal v. Litton Loan Servicing LP, No. 5:09cv322, 2009 U.S. Dist. LEXIS 73183, at *2 (S.D.W.Va. Aug. 18, 2010) (quoting Hartley, 187 F.3d at 423. The fraudulent joinder standard "is even more favorable to

the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Wygal, 2009 U.S. Dist. LEXIS 73183, at *2 (quoting Mayes, 198 F.3d at 464). Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Marshall v. Manville Sales Corp., 6 F.3d 229, 233 (4th Cir.1993); see also Hartley, 187 F.3d at 426 ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.").   Further, in determining "whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.' " Mayes, 198 F.3d at 464 (quoting AIDS Counseling and Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1004 (4th Cir.1990)).

Courts have diverged on the issue of whether substitute trustees are properly joined parties whose citizenship should be taken into account in the diversity analysis. See Sherman v. Litton Loan Servicing, No. 2:10cv567, 2011 U.S. Dist. LEXIS 71756, at *14-17 (E.D. Va. July 1, 2011) (collecting cases).  When determining a substitute trustee's status for diversity purposes, the Court should consider "the nature of the actions taken by the trustee, if any, and the type of relief sought against the trustee, if any." Id. at *17.   The only case cited by Plaintiffs in support of their argument that the Substitute Trustee's citizenship should be factored into the diversity analysis is Payne v. Bank of America, 2010 U.S. Dist. LEXIS 12076. Mot. to Remand 3-4.  In that case, the substitute trustee held title to the property at issue, plaintiff made extensive factual and legal allegations against the trustee, and plaintiff was seeking to have the property re-titled in their name. Id.   The instant case, however, more closely resembles the factual scenarios in Sherman and Wygal, where the courts concluded the substitute trustees were fraudulently joined and should not factor into the diversity analysis.  In Sherman, the plaintiffs requested a loan

7

modification, which was denied by the lender. 2011 U.S. Dist. LEXIS 71756, at *4. When plaintiffs received notification from the substitute trustee that a foreclosure sale of the home would occur, plaintiffs filed an action in state court to prevent the foreclosure, alleging breach of contract and negligence claims similar to those alleged in the instant Complaint. Id. The court held that, since plaintiff raised no issues of title in the complaint, claimed no misconduct by the substitute trustee, and requested no relief that only the substitute trustee could provide, the substitute trustee was improperly joined. Id. at *18-19; c.f. Forbes v. Wells Fargo, No. 4:10cv160 (E.D. Va. Mar. 18, 2011) (finding the substitute trustee was not fraudulently joined in a complaint almost identical to the instant Complaint).

In Wygal, the plaintiff filed suit alleging a lender violated the West Virginia Consumer Credit Protection Act by continuing to contact plaintiff directly after notification that plaintiff had hired an attorney to represent her with respect to her outstanding debt. 2009 U.S. Dist. LEXIS 73183, at *1. Plaintiff alleged the substitute trustee was a necessary party to the action, because the substitute trustee had been "directed to foreclose upon the property and refuse[d] to postpone or halt the foreclosure." Id. at *3. The court noted the substitute trustee's obligation under West Virginia law was to sell the trust property when directed to by the trust-creditor, and the substitute trustee has no duty to consider the objections of the plaintiff, or to postpone the sale at her request. Id. at *4. Finding the defendant met its burden of demonstrating a West Virginia state court would dismiss the claims against the substitute trustee, the court held the substitute trustee was fraudulently joined and not to be factored into the diversity analysis. Id. at *5; see also Dempsey v. Transouth Mort. Corp., 88 F. Supp.2d 482, 484 (W.D.N.C. 1999) (holding that where a complaint contained no factual allegations with respect to the substitute trustee, other than their place of citizenship, the substitute trustee's citizenship was not

considered for purposes of diversity).

While the instant Complaint focuses on the actions of BOA, it contains the following allegations regarding the Substitute Trustee:

> 46.    Defendant Substitute Trustee, as appointed agents for Defendant BOA, are bound by the same contractual terms as Defendant BOA concerning foreclosure on the property in question.
>
> 47.    Defendant Substitute Trustee breached the contract established between Defendant BOA and Plaintiff by following through with foreclosure proceedings without first receiving certification from Defendant BOA.

Compl. ¶¶ 46-47.   Plaintiffs' allegations that the Substitute Trustee breached a contract by "following through with foreclosure proceedings" (Compl. ¶ 47) must be read in conjunction with Plaintiffs' request for a preliminary injunction "to stop the foreclosure sale of their home" (Compl. ¶ 53).   According to Defendants, no foreclosure has taken place. Opp'n 13.   This Complaint is almost identical to the complaint in Sherman.   The only difference here is that Plaintiffs have alleged this breach of contract action against the Substitute Trustees.

The Court finds Plaintiffs cannot establish a breach of contract claim against the Substitute Trustee "even after resolving all issues of law and fact in [Plaintiffs'] favor." See Wygal, 2009 U.S. Dist. LEXIS 73183, at *2.   First, the Complaint acknowledges the Substitute Trustee is not a party to the contract they allegedly breached. Compl. ¶ 46.   The Complaint asserts the Substitute Trustee is "the appointed agents for Defendant BOA," and "bound by the same contractual terms as BOA." Id.   To the contrary, the powers of the substitute trustee "'are limited and defined by the instrument under which it acts,' meaning the Deed of Trust to the Property." Payne, 2010 U.S. Dist. LEXIS 12076, at *19 (quoting Powell v. Adams, 18 S.E.2d 261, 262-63 (Va. 1942).   The Deed of Trust outlines the Trustee's duties "if Lender invokes the

power of sale." Memo in Support of Mot. to Dismiss, Ex. A p. 13.[2]  The Substitute Trustee has

no role in determining whether or not Plaintiffs are granted a loan modification, which is the

subject of the contract the Substitute Trustee has allegedly breached. See Mem. in Support of

Mot. to Dismiss, Ex. A.  Nor does the substitute trustee have any role in determining when to

foreclose on the Property, the action allegedly causing the breach of contract. Id.  The Substitute

Trustee's only role with respect to the Plaintiffs will be as substitute trustee if and when a

foreclosure of the Property takes place. Opp'n 13.  Moreover, the Complaint seeks relief only

from BOA.  The Court finds Plaintiffs have no plausible cause of action against the Substitute

Trustee in state court, and the Substitute Trustee was improperly joined.  Consequently, the

Court recommends that Plaintiffs' motion to remand be DENIED as there is complete diversity

among the properly joined parties.[3]

In addressing Defendants' Motion to Dismiss, the Court finds that the Complaint fails to

state a claim for relief and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs'

breach of contract claims fail because: (1) there is no private right of action for individual

borrowers to assert claims against lenders for violations of HAMP, and (2) Plaintiffs have failed

to allege a valid contract to modify their loan existed.  The Complaint states BOA advertises its

participation in the HAMP program on its website (Compl. ¶ 3), Plaintiffs contacted BOA to

---

[2] The Court may consider the Deed of Trust attached to Defendants' Motion to Dismiss. See Demetry v. Lasko Prods., 284 Fed. Appx. 14, 15 (4th Cir. 2008); Gasner v. Cty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.").

[3] This Report and Recommendation does not address Defendant's argument that the court has federal question jurisdiction over the case.  It is noted, however, that similar cases, where borrowers have sued lenders for failure to modify loans following the submission of a HAMP application, have been remanded to the state court where diversity was not a basis for removal. See Mosley v. Wells Fargo Bank, N.A., No. 2:11cv268, 2011 WL 3439243 (E.D. Va. Aug. 5, 2011); Asbury v. America's Servicing Co., No. 2:11cv99, 2011 WL 3555846 (E.D. Va. July 13, 2011) (dismissing HAMP claims and remanding the remaining state law claims); Paine v. Wells Fargo Bank, N.A., No. 2:11cv89, 2011 WL 3236390 (E.D. Va. July 12, 2011) (same); Melton v. Suntrust Bank, 780 F.Supp.2d 458 (E.D. Va. 2011) (remanding case for lack of subject matter jurisdiction).

10

discuss a loan modification (Id. at ¶ 5), and the parties "contracted to engage in foreclosure avoidance measures" (Id. at ¶6).  This scenario is later characterized as BOA's solicitation of Plaintiffs to apply for a HAMP loan modification or other foreclosure avoidance options. Id. at ¶ 27.  Plaintiffs allege that BOA made an "irrevocable offer" to modify Plaintiffs' loan if Plaintiffs met the condition precedent of financial eligibility for the HAMP program. Compl. ¶¶ 22, 27, 29. According to Plaintiffs, they met the condition precedent (Compl. ¶ 28), presumably forming a contract between BOA and Plaintiffs to modify Plaintiffs' loan.  Plaintiffs then allege BOA breached this contract by failing to modify Plaintiffs' loan, failing to act in good faith to review foreclosure avoidance alternatives, and failing to forebear foreclosure proceedings until Plaintiffs were reviewed for foreclosure alternatives. Compl. ¶ 35.  Plaintiffs further contend the Substitute Trustee, as an agent of BOA, was bound by the same contract, which they breached by following through with foreclosure proceedings. Compl. ¶¶ 46, 47.

This Court has consistently held there is no private right of action for individual borrowers to assert claims against lenders for violations of HAMP. See Mosley v. Wells Fargo Bank, N.A., No. 2:11cv268, 2011 WL 3439243 (E.D. Va. Aug. 5, 2011); Asbury v. America's Servicing Co., No. 2:11cv99, 2011 WL 3555846 (E.D. Va. July 13, 2011); Paine v. Wells Fargo Bank, N.A., No. 2:11cv89, 2011 WL 3236390 (E.D. Va. July 12, 2011); Sherman, No. 2:10cv567, 2011 U.S. Dist. LEXIS 71756 (E.D. Va. July 1, 2011); Melton v. Suntrust Bank, No. 2:11cv204, 780 F. Supp.2d 458, 459 (E.D. Va. 2011); Bourdelais v. J.P. Morgan Chase, No. 3:10cv670, 2011 U.S. Dist. LEXIS 35507 (E.D. Va. Apr. 1, 2011) (collecting cases); Fowler v. Aurora Home Loans and Fannie Mae, No. 2:10cv623, 2011 U.S. Dist. LEXIS 73344 (E.D. Va. Mar. 31, 2011); Winn v. Chase Mortgage Servs., No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041 (E.D. Va. Oct. 29, 2010); Pennington v. PNC Mortgage,  No. 2:10cv361, 2010 U.S. Dist. LEXIS

143157 (E.D. Va. Aug. 11, 2010). Plaintiffs' attempt to bring a breach of contract action based on the "contract" allegedly created when BOA solicited Plaintiffs to apply for a HAMP loan modification fails to state a cause of action independent of HAMP. See Bourdelais, 2011 U.S. Dist. LEXIS, at *12-13. Therefore, to the extent Plaintiffs' breach of contract claims are based on Defendants' failure to properly consider Plaintiffs' HAMP application, or failure to provide Plaintiffs a HAMP loan modification, the claims should be DISMISSED as there is no private right of action under HAMP.

Moreover, to the extent Plaintiffs allege Defendants breached their contract to modify Plaintiffs' loan by failing to consider Plaintiffs for "in-house" modifications independent of HAMP, the claim fails because Plaintiffs have not alleged the necessary elements of the claim. Under Virginia law, a party claiming breach of contract must establish three elements to prevail: (1) a legally enforceable obligation under a contract, (2) a breach of that obligation, and (3) injury or damage to the plaintiff flowing from that breach. Sanders v. UDR, Inc., No. 3:10cv459, 2010 U.S. Dist. LEXIS 106567 (E.D. Va. Oct. 4, 2010) (citing Eplus Tech., Inc. v. Nat'l R.R. Passenger Corp., 407 F. Supp. 2d 758, 761 (E.D. Va. 2005); Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 135 (Va. 2009). Plaintiffs have not alleged facts sufficient to establish the first element – a legally enforceable obligation under a contract. Plaintiffs' first hurdle is alleging a valid and enforceable contract to modify the loan existed, and that the parties mutually agreed the modification was effective. See Stanley's Cafeteria Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983) (holding an agreement to modify a contract must be proven by "clear, unequivocal and convincing evidence, direct or implied"). To establish the essential elements of a valid contract, there must be "complete agreement which requires acceptance of an offer, as well as valuable consideration." Montagna v. Holiday Inns, Inc. 269 S.E.2d 838, 844 (Va. 1980)

(internal citations omitted).  Plaintiffs have failed to allege mutual and complete agreement to modify Plaintiffs' loan.

First, the Complaint does not allege a viable offer by BOA.  BOA's solicitation of Plaintiffs to apply for a loan modification cannot be considered an irrevocable offer to modify the loan as alleged in the Complaint.  A solicitation to offer does not amount to an offer which, when acted upon by the listener, creates a contract. *Corbin on Contracts*, Vol. 1, § 2.3; see also *Williston on Contracts*, Vol. 1, § 4.9 ("A mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer."; Foxworth v. U.S., 2010 U.S. Dist. LEXIS 106759 (E.D. Va. 2010) (finding counsel's statement that he will "use best efforts" to ensure performance in a certain manner, is a "statement of intent [which] does not rise to the level of a legally enforceable obligation").  When a loan modification is contemplated, the borrower *offers* the application to the lender, which the lender can either accept or reject after a determination of the borrower's eligibility.  See Kimrey v. Am. Bankers Life Assurance Company of Florida, 2008 U.S. Dist. LEXIS 23060, at *6 (W.D. Va. Mar. 20, 2008).  Similarly, a lender's prequalification of a borrower does not obligate the lender to extend or modify a loan.  Jefferson v. Briner, Inc., 2006 U.S. Dist. LEXIS 41423, at *18-19 (E.D. Va. June 21, 2006).  Further, the Court takes judicial notice of the fact that HAMP Guidelines "guarantee only that an eligible borrower will be evaluated for a loan modification," and do not require mortgage servicers to modify loans.  See Pennington, 2010 U.S. Dist. LEXIS 143157, at *13 (citations omitted).  Moreover, according to the Complaint, BOA denied the loan modification on the grounds that "Plaintiffs' financials do not support affordability."  Compl. ¶ 21.  Plaintiffs have failed to allege the parties mutually agreed to valid and binding contract to modify Plaintiffs' loan.  Without establishing a valid

13

contract existed, Plaintiffs' claims for breach of that contract must fail. Therefore, Plaintiffs' claim that Defendants breached their contract to modify Plaintiffs' loan by failing to consider Plaintiffs for "in-house" modifications independent of HAMP should be DISMISSED.[4]

Next, Plaintiffs allege BOA committed "negligence per se" when BOA failed to comply with the HAMP guidelines while processing Plaintiffs' loan modification application. Compl. ¶¶ 40-45. Plaintiffs contend BOA was required to comply with the HAMP statute, "including but not limited to, the timely and accurate processing of the Plaintiffs' modification application, keeping in contact with the borrower and their agents during the modification process, and timely notification of Plaintiffs if they was [sic] no longer being reviewed or was denied a modification." Compl. ¶ 41. Plaintiffs' allegations that BOA committed negligence per se should be DISMISSED, as Plaintiffs do not have a private right of action to enforce HAMP regulations. See Winn, 2010 U.S. Dist. LEXIS 143041, at *7-9; Pennington, 2010 U.S. Dist. LEXIS 143157, at *9-11.

In Plaintiffs final claim, Plaintiffs allege Defendants' conduct in proceeding with foreclosure of the Property constitutes tortious interference with the business relationship between the "note-holder" and Plaintiffs, because both the note-holder and Plaintiffs would gain economic benefit through the completion of a loan modification. Compl. ¶¶ 49-50. The note-holder in this case is BOA. Thus, it appears, Plaintiffs are alleging BOA interfered with its own contract. In Virginia, to make a prima facie showing of tortious interference, Plaintiffs must

---

[4] Defendants argue the alleged verbal contract to modify Plaintiffs' loan would be barred in Virginia by the statute of frauds. Mem. 13-15. Plaintiffs' first lien mortgage necessarily falls within the statute of frauds as it relates to the purchase of real estate and the contract would not be performed within one year. See Va. Code Ann. § 11-2(6) (requiring contracts related to the purchase of real estate to be in writing), and § 11-2(8) (requiring contracts that are not to be performed within one year to be in writing). Consequently, any contract to modify the mortgage lien would also need to be in writing to satisfy the statute of frauds. See Lindsay v. McEnearney Assocs., 531 S.E.2d 573, 575-76 (Va. 2000) (holding when "a contract is required to be in writing pursuant to Code § 11-2, any modification to that contract must also be in writing"). While several other jurisdictions have required a contract to modify a mortgage loan to be in writing, no Virginia cases were cited, and the Court will not rely on this argument in recommending dismissal.

show: (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferor, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy has been disrupted. <u>Rappahannock Pistol & Rifle Club, Inc. v. Bennett</u>, 546 S.E.2d 440, 443 (Va. 2001).  A "person cannot be liable for interfering with his own contract." <u>King & King Chartered v. Harbert Int'l, Inc.</u>, 503 F.3d 153, 157 (D.C. Cir. 2007).  Instead, the perpetrator must intentionally and improperly interfere with performance of "a contract [] between another and a third person." <u>See</u> <u>Chaves v. Johnson</u>, 335 S.E. 2d 97, 102 (Va. 1985) (citing *Restatement (Second) Torts* § 766 (1977)).  BOA cannot be liable for interfering with a contract to which it was a party.  In addition, for the reasons stated in the preceding paragraphs, Plaintiffs have failed to allege a valid contract to modify Plaintiffs' loan existed.  Accordingly, Plaintiffs' claim of tortious interference with that contract should be DISMISSED.

Lastly, Plaintiffs have asked for a preliminary injunction to "preserve the status quo until the complaint could be reviewed." Compl. ¶ 51.  The Complaint is now being reviewed, the undersigned is recommending that the Complaint be dismissed.  Plaintiffs have failed to establish the first prong necessary for obtaining a preliminary injunction – that they are likely to succeed on the merits. <u>See</u> <u>Winter v. NRDC</u>, 555 U.S. 7, 20 (2008).  Consequently, Plaintiffs' request for a preliminary injunction should be DENIED.

## IV. <u>RECOMMENDATION</u>

For the above stated reasons, the Court recommends that Plaintiffs' Motion to Remand be DENIED and Defendant's Motion to Dismiss be GRANTED.

## V. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this second amended report to the objecting party, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984), cert. denied, 474 U.S. 1019 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

_____/s/_____

Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
November 29, 2011

## CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the

following:


Heath J. Thompson, Esq.
Rachel E. Wentworth, Esq.
Heath Thompson, P.C.
3770 Progress Rd.
Norfolk, VA 23502

Erin Q. Ashcroft, Esq.
McGuire Woods LLP
101 W. Main St.
Suite 9000
Norfolk, VA  23510


                                        Fernando Galindo, Clerk


                                 By _____
                                        Deputy Clerk
                                        November        , 2011

17